## O'CONNOR *v.* THE STATE.

LIQUOR LAW.—*Evidence.*—Where, in a prosecution for selling intoxicating liquor without a permit, the evidence showed that the accused sold a bottle of beer, which was taken by the purchaser to a shed, from fifteen to twenty feet distant from the seller's premises, and there drank, and that there was no agreement or understanding between the buyer and seller as to where the liquor was to be drank;

*Held,* that there was no violation of the law by the seller.

From the Jasper Circuit Court.

*R. Gregory, D. Turpie,* and *H. D. Pierce,* for appellant.

*J. C. Denny,* Attorney General, for the State.

BUSKIRK, J.—The assignments of error call in question the correctness of the ruling of the court, in overruling the motions to quash the affidavit, and for a new trial. The objections urged against the affidavit are the same as in the

case of *O'Connor.* v. *The State, ante,* p. 347, and for the reasons  there stated, we hold that the ruling of the court was correct.

We next inquire whether the court erred in overruling the motion for a new trial. The evidence was as follows: John Burger testified:

"My name is John Burger. I reside in Remington, Jasper county, Indiana. I know Timothy O'Connor, the defendant herein. Timothy O'Connor resides in Remington, Jasper county, Indiana. He keeps a grocery and provision store, and sells whiskey and beer in a room in the west part of his store. I know John W. O'Connor; he and I went to Mr. Timothy O'Connor's store sometime this last summer, since the 1st day of March, and before the filing of the affidavit in this cause, and he got a bottle of beer. We then went out on the street, south of the house, to a shed, and there drank it. We took the glasses out of Timothy O'Connor's store. I do not know whether O'Connor saw us take the glasses or not. I did not see him when we went out. The glasses were returned to the place where we got them. I did not see John W. O'Connor pay for the beer. The shed is fifteen or twenty feet from O'Connor's place of business, and on the street south of O'Connor's place of business. All the acts of the defendant, O'Connor, were performed since the 1st day of March, 1873, and were performed in Jasper county, and State of Indiana. The defendant's grocery store fronted to the east, on a public street. There was a partition in the room, running north and south. The defendant kept intoxicating liquor in the west room for sale, and did not in the east room. There was a door opening on the street on the south side of said liquor room. John W. O'Connor went into the back room by the side door opposite the street, on the south side of the house, and I stayed outside by the door. When John W. O'Connor bought the beer, the defendant, Timothy O'Connor, went back into the front room and paid the defendant some money. The tumblers were sitting on a box, bottom side up, in the west

O'Connor *v*. The State.

room, and he, John W. O'Connor, took the tumblers and passed out at the south door to the shed, fifteen or twenty feet from the store of the defendant, on the public street. The defendant said nothing whatever about where the liquor was to be drank, nor asked anything about where the liquor had been drank. The beer was malt beer, and the defendant kept liquors for sale at the place where the beer was purchased."

The witness, being cross-examined, testified as follows:

"There was no understanding between the defendant, Timothy O'Connor, and Mr. John W. O'Connor and myself, as to where we should go to drink. I often drank beer with John W. O'Connor; sometimes we took it across the street, by Church & Hartley's warehouse, and sometimes in the shed on the street, and sometimes in the lumber yard south of the defendant's store. I do not know who exercised ownership over the shed on the street, or who controlled it. It was entirely disconnected from the defendant's place of business, and is situated in the street, about fifteen or twenty feet from his place of business."

Charles R. McCully testified:

"My name is Charles R. McCully. I reside in Remington. Am acquainted with the defendant, Timothy O'Connor. Until a few weeks ago I lived in a house belonging to the defendant, on the same block in which his place of business is, and there was no partition fence between us. I took possession of the shed on the street to put a few traps in. I put a chicken-coop and some kegs in there. O'Connor, the defendant, did not exercise any control over the shed. I occupied the shed from some time last fall until it was moved from the place where it was at the time Mr. Burger testified. The shed was used by passers on the streets to urinate in."

We are very clearly of the opinion that the judgment in this case must be reversed. The shed where the liquor was drank was not adjoining to or connected with the place where

the liquor was sold. The appellant had no control over the shed. It was out in a public street, fifteen or twenty feet from the place where the liquor was sold, and was used by another person. See *O'Connor* v. *The State, ante,* p. 347.

The judgment is reversed; and the cause is remanded, for a new trial.